UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| Aparna VASHISHT-ROTA, <br><br>        Plaintiff, <br><br>v. <br><br>OTTAWA UNIVERSITY, <br><br>        Defendants. | Case No.: 20-cv-0959-AGS-KSC <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (ECF 71) AND CLOSING CASE** |
|---|---|

  In her complaint's fourth iteration, plaintiff again faults Ottawa University for forwarding her misconduct reports about her former employer to that very employer. Once again, however, plaintiff fails to state a claim. This newest complaint is dismissed, without leave to amend.

## BACKGROUND

  As in each prior complaint, plaintiff Dr. Aparna Vashisht-Rota alleges she worked in the "niche market" of international student recruitment through "curricular practical training" (CPT) programs. (ECF 70, at 3.) That is, students who "are in between visa classes (student to work)" "enroll in these so-called CPT programs that allow a university to issue work authorization at the university level while the students await their work visas." (*Id.*) Through her then-employer HMS,[1] Vashisht-Rota helped found a CPT program at defendant Ottawa University. In 2017, after she and HMS had a falling out, HMS and others purportedly "ganged up" on her, "remove[d] her as competition," refused to pay her, and sued her. (*Id.* at 5–6.)

  Two years later, Vashisht-Rota emailed Ottawa University's Dr. DeWald about the past "issues she had with HMS." (ECF 70, at 5.) "Dr. DeWald passed the emails to HMS with commentary." (*Id.*) Apparently receiving no response from DeWald, Vashisht-Rota

---

[1] Vashisht-Rota previously identified this employer as "Howell Management Services." (*See* ECF 52, at 5.) But the third amended complaint exclusively calls the employer "HMS" or "Main Agent." (*See generally* ECF 70.)

later "used" Ottawa University's "EthicsPoint system," "which is private," to report HMS's "harassment." (*Id.* at 7, 9, 24.) This report too was "forwarded" to HMS, this time by Ottawa employee Carrie Stevens. (*Id.* at 12.)

In 2020, Vashisht-Rota sued Ottawa University, charging them in her first (voluntarily) amended complaint with breaches of privacy and fiduciary duty, infliction of emotional distress, and negligence. (*See* ECF 1 & 25.) Over the next few years, Ottawa successfully moved to dismiss the first and second amended complaints for failing to state a claim. (*See* ECF 38; ECF 65.) This Court then granted Vashisht-Rota "one last opportunity to cure the defects" in her complaint, cautioning that any future dismissal for "failure to state a claim" would likely be "with prejudice." (ECF 65, at 13.)

Vashisht-Rota has returned with a third amended complaint, which Ottawa University again moves to dismiss for familiar reasons. (*See* ECF 71.)

## DISCUSSION

To survive a motion to dismiss, a complaint must contain enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 12(b)(6). Plausibility requires more than mere "conclusions" or a "formulaic recitation" of elements; it must be based on "factual allegations" that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

**A.    Vicarious Liability**

Before addressing the specific claims, this Court must determine whose actions Ottawa University may be held accountable for. Vashisht-Rota seeks to impute to Ottawa the actions of HMS, DeWald, and Stevens. (*See, e.g.*, ECF 70, at 13–16 (alleging harassment while relying almost exclusively on HMS-related conduct).) Under the doctrine of respondeat superior, "principals or employers" are ordinarily "vicariously liable for acts of their agents or employees in the scope of their authority or employment." *Meyer v. Holley*, 537 U.S. 280, 285 (2003). "In determining whether vicarious liability may be imposed, the extent of control exercised by the principal is the essential ingredient." *Jones*

*v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018) (cleaned up) (discussing California agency law); *see also* Restatement (Third) Of Agency § 2.04 cmt. b ("Respondeat superior is inapplicable when a principal does not have the right to control the actions of the agent . . . .").

### 1. *HMS*

In dismissing the previous complaint, this Court deemed allegations of Ottawa's control over HMS "entirely conclusory," except for Ottawa's limited authority to set "guidelines and procedures" unrelated to HMS's employment decisions. (ECF 65, at 7.) In the new complaint, Vashisht-Rota makes several conclusory references to Ottawa's "control" or "total control" of HMS. (*See, e.g.*, ECF 70, at 4.) And she adds some factual detail, including discussions of the parties' operative contract, applicable federal regulations, and shared activities. Each of these new allegations, however, still fall short of establishing the necessary employer-employee or principal-agent relationship.

First, Vashisht-Rota relies on the contract between Ottawa and HMS—or at least her account of it, as she does not provide the document itself. (*See* ECF 70, at 4.) She says it sets out "[i]ndustry standards and norms," including "the parties' roles and responsibilities, performance measures, ethical behaviors, compensation, the need for confidentiality and other issues." (*Id.*) She also asserts that "the terms of the agreements negotiated between [HMS] and its partner colleges and universities have a 'trickle down' effect and apply equally to any third parties that come within their purview," presumably including herself. (*Id.*)

Even if we assume her description of this crucial contract is accurate, however, it does not suggest that HMS was Ottawa's agent or that Ottawa controlled HMS's employment decisions. Contracts with performance standards are common in both agency relationships (like employer-employee) *and* non-agency relationships (like independent contractors). *See, e.g., Jones*, 887 F.3d at 452 (finding no employment relationship although defendant "exercised some amount of control" over the offending telemarketing company, including setting "guidelines and procedures"). And "evidence of an

independent contractor relationship is insufficient in itself to establish an agency relationship." *United States v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010). Thus, the contract's mere existence doesn't plausibly imply enough control over HMS to make it an agent. Nor does it establish that Ottawa controlled HMS's employment-related decisions beyond the identified contractual obligations.

Next, Vashisht-Rota suggests that Ottawa has "total control" over HMS because Ottawa must "follow federal regulation[s] for immigration," which dictate "its admission criteria for each program as noted in its catalog to which it is legally bound." (ECF 70, at 4.) But federal regulations can't conjure the necessary principal-agent relationship here. By analogy, the tax code dictates many requirements for taxpayers in preparing their filings. But if Ottawa hired H&R Block to prepare its tax returns, Ottawa would not become vicariously liable for H&R Block's employment decisions.

Finally, the new complaint alleges that Ottawa "dictates HMS' conduct in recruitment," as the two parties "attend recruitment events together that are replete with technical information about the program, tuition, admissions policies," and the like. (ECF 70, at 4–5.) Yet the parties' joint attendance at such events does not imply that one controls the other. In particular, nothing about these affairs suggests that Ottawa dictates HMS's employment-related decisions.

Looking beyond these questionable arguments for Ottawa's control of HMS, this Court has scoured the complaint for facts that might suggest any employment or principal-agent relationship. The Ninth Circuit has adopted ten non-exhaustive factors for judging when "a principal has enough authority to control the actions of its agent such that the principal may be held vicariously liable to the same extent as an employer." *Jones*, 887 F.3d at 450 (listing factors). Unfortunately for plaintiff, the third amended complaint is devoid of information about most of these factors and contains only hints of others—which mostly cut against vicarious liability. Take the "distinct occupation" factor. HMS is a for-profit "recruiter," which is a distinct occupation from Ottawa University's "not-for-profit" educational mission. (*See* ECF 70, at 3.) Also, HMS "offered the same services to

others during the same period." *See Jones*, 887 F.3d at 452; (ECF 70, at 4 (pointing out that HMS served other "partner colleges and universities" in the same capacity)); *see also Vashisht-Rota v. Harrisburg Univ.*, No. 20-CV-0967-AGS-KSC, 2024 WL 85884, at *1 (S.D. Cal. Jan. 8, 2024) (noting that, during the same period, another university hired HMS "to be its 'sole vendor' for 'international student recruitment'"). All these facts "strongly suggest[]" HMS was "not subject to sufficient control [by Ottawa] to establish vicarious liability." *See Jones*, 887 F.3d at 452.

At best, one might arguably infer that HMS was Ottawa's agent for the narrow purpose of recruiting international college students. Even then, the facts don't plausibly suggest that Ottawa's control over HMS was akin to an employer-employee relationship. Nor do they establish that the scope of any more limited agency relationship included Ottawa accepting responsibility for HMS's employment decisions. Without more, HMS's employment decisions—including any alleged harassment, retaliation, hostile work environment, or the like—cannot plausibly be imputed to Ottawa.

### 2. *DeWald and Stevens*

In the prior complaint, Vashisht-Rota plausibly pleaded that DeWald and Stevens were Ottawa University employees, acting within the scope of their employment. That is, she previously alleged that they are "Ottawa's direct employees" who "received details of complaints about a university contractor—which presumably are only available to university employees," and Vashisht-Rota "even provide[d] their titles: supervisor for international recruitment and supervisor for compliance." (ECF 65, at 7–8 (citing ECF 48, at 7).) Her current complaint is similar, though it omits Stevens's title this time. (*See generally* ECF 70.) Regardless, she still claims that Stevens is Ottawa's "employee," with access to its EthicsPoint complaint system. (*See* ECF 70, at 39.) This is sufficient to plausibly suggest Ottawa may be vicariously liable for Stevens's and DeWald's actions.

### B. Sufficiency of the Claims

Having resolved whose behavior can be attributed to Ottawa, the Court turns to each individual count.

5

### 1. *Negligence (Count 1)*

For Vashisht-Rota's garden-variety California negligence claim, she must show that Ottawa "had a duty to use due care, that [it] breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *See Brown v. USA Taekwondo*, 483 P.3d 159, 164 (Cal. 2021) (cleaned up). Ottawa disputes the duty element, contending that it was under no duty to keep confidential the information that Vashisht-Rota sent it "voluntarily." (*See* ECF 71-1, at 21.)

Although Vashisht-Rota never specifies the source of Ottawa's alleged duty, it might arise solely from the foreseeable nature of a plaintiff's harm. California law begins from the premise that all persons are under a duty "to use ordinary care to prevent others being injured as the result of their conduct." *Rowland v. Christian*, 443 P.2d 561, 564 (Cal. 1968) (cleaned up). But some situations justify a "departure from this fundamental principle," such that there is no general duty of care. *Id.* Plaintiff's alleged "injury" is a central focus in evaluating whether to apply—or depart from—this general duty. *See Hayes v. County of San Diego*, 305 P.3d 252, 257 (Cal. 2013). In assessing its applicability, courts consider, among other things, "whether the category of negligent conduct at issue is sufficiently likely to result in the *kind of harm* experienced." *Kuciemba v. Victory Woodworks, Inc.*, 531 P.3d 924, 943–44 (Cal. 2023) (emphasis added).

The problem here is that Vashisht-Rota doesn't plausibly allege *any* kind of harm arising from DeWald's or Stevens's actions, making it impossible to determine whether they had a general duty of care. Vashisht-Rota's HMS employment ended in "March 2017"—more than two years before they forwarded her complaints to HMS. (*See* ECF 70, at 5.) Thus, they couldn't have prompted—or worsened—any HMS employment harassment or retaliation against Vashisht-Rota, as she wasn't employed by HMS then. This damning chronology makes it hard to accept many of the complaint's conclusory allegations, such as the claim that Stevens "made the situation worse for Plaintiff resulting in more retaliation and . . . additional losses." (*See* ECF 70, at 8; *see also id.* at 12 (alleging that, due to Stevens's actions, "HMS has refused to honor any of its contracts").)

Vashisht-Rota alludes to some post-employment harms that may have flowed from the email-forwarding, but not with sufficient factual detail to pass muster. For instance, she claims that Stevens's conduct somehow intensified her "legal disputes" with HMS. (ECF 70, at 12.) Yet she doesn't explain how the forwarding of her complaints to HMS—with whom she was already in litigation—prompted HMS to change its litigation strategy. Similarly, she suggests that, because Ottawa employees forwarded her complaints to HMS, she lost the opportunity to work with Ottawa to place CPT students. (*See* ECF 70, at 9.) But she provides no explanation of how the forwarding of complaints to her years-ago ex-employer somehow cost her the opportunity to work alongside Ottawa.[2] Ottawa didn't work with plaintiff in 2019, either before or after the email-forwarding. (*See id*. at 5 (alleging that in 2017 HMS and others "removed her[,] as she is competition" to HMS); *id*. at 12–13 (arguing she should've been provided "interim access till the [HMS] dispute was resolved"); *id*. at 18 (complaining that Ottawa "refused to hire" her over HMS).) Finally, she asserts that she "can't go to another university of which she is not a founder [of the university's CPT program] and get the same program or compete on the rates." (*Id.* at 9.) But she never explains why the forwarding of her email and complaint to HMS bars her from suitable employment with other universities.

Because Vashisht-Rota is unrepresented, the Court has strained to find an alleged injury to reference in assessing whether the general duty of care applies. Looking far beyond Vashisht-Rota's own arguments, the Court has considered, for example, emotional distress. Although Vashisht-Rota doesn't explicitly tie emotional injuries to the negligence claim (count 1), that harm crops up elsewhere in the complaint. (*See, e.g.*, ECF 70, at 15 (mentioning "emotional distress" in Count 2); *id.* at 38 (mentioning it again in the "Prayer

---

[2] For unknown reasons, Vashisht-Rota presupposes that as a "founder," she had some right to work for or with Ottawa on an ongoing basis. (*See, e.g.*, ECF 70, at 9 ("Plaintiff is in a special relationship with Defendant because she is the founder of the CPT program."); *id.* at 12–13 (claiming she should have been "offered interim access till the dispute [with HMS] is resolved even if to limit to 10 student applications/day").)

7

for Relief").) Perhaps Vashisht-Rota could argue that the law recognizes a duty not to forward an employment-harassment complaint to the accused employer when doing so would foreseeably cause emotional distress.

Even assuming Vashisht-Rota adequately pleaded a negligence-related emotional injury, however, this theory faces both legal and factual obstacles. As for the legal barriers, California courts take a jaundiced view of duties implied from emotional distress. In *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795 (Cal. 1993), the California Supreme Court held that "unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery [for negligence] is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty." *Id*. at 807–08.

At any rate, even if this legal theory is viable, and even if the newest complaint is reimagined to incorporate it, nothing suggests that Ottawa University should have known that forwarding Vashisht-Rota's emails would cause her actionable emotional distress. Perhaps a defendant could be charged with foreseeing emotional harm from forwarding emails with private medical details or embarrassing personal information. But nothing of the kind is alleged here. Despite years of litigation and thousands of pages of attachments, Vashisht-Rota still hasn't offered anything but the barest conclusions about the contents of the forwarded emails and EthicsPoint complaint. (*See, e.g.*, ECF 70, at 5 ("Plaintiff notified Dr. DeWald by email of the issues she had with HMS. Dr. DeWald passed the emails to HMS."); ECF 70, at 8 ("Carrie Stevens knew of the dispute and passed on the apparently private communications to HMS[.]").) The Court struggles to imagine what information these emails could contain that would have surprised HMS and foreseeably caused Vashisht-Rota emotional distress. When these complaints were forwarded to HMS, it was already aware of her criticisms. At that time, after all, Vashisht-Rota had been in litigation with HMS for years. *See generally Howell Mgmt. Servs. v. August Education Group,* Case No. 170100325 (Utah Super. Ct. 2017); *Vashisht-Rota v. Howell Mgmt. Servs.*, Case No. 3:18-cv-2010-L-AGS (S.D. Cal. 2018).

With no plausible injury alleged for the negligence claim, the Court cannot ascertain whether the general duty of care applies or whether defendants breached it. *See Kuciemba*, 531 P.3d at 944. Nor can the Court assess causation—whether "the injury would not have occurred 'but for' [defendant's] conduct." *See Rutherford v. Owens-Illinois, Inc.*, 941 P.2d 1203, 1214 (Cal. 1997). For all these reasons, the complaint fails to state a claim for garden-variety negligence, so count 1 must be dismissed.

### 2. *Harassment and Retaliation-Related Claims (Counts 2–5)*

Next, Ottawa protests that Vashisht-Rota fails to plausibly plead she faced either harassment or retaliation. In Counts 2 through 5, she alleges that HMS harassed her and that Ottawa bolstered or aided that harassment, either generally or in retaliation for her private complaints, by forwarding them to HMS. (*See* ECF 70, at 14, 18, 19, 21.)

Last time, the problem was that the allegations were "devoid of details about the harassment's severity." (ECF 65, at 10.) In the third amended complaint, Vashisht-Rota added facts in each count about behavior she believes constitutes harassment. The problem now is that every single incident happened *after* her employment allegedly ended with HMS in March 2017. (*See, e.g.*, 70, at 22 (alleging HMS harassed her "through" a third person in "July 2017"); *id.* (DeWald's email forwarding in 2019); *id.* (alleging HMS harassed her through a third-party entity called "Bluechip" in "August 2020").) None of these post-employment actions can support the various flavors of employment claims she alleges, as Vashisht-Rota had no business or employment relationship with HMS during the relevant period. (*See* ECF 70, at 13, 16, 19, 20 (Counts 2–5, involving claims under Cal. Civil Code § 51.9 and Cal. Gov't Code § 12940(h), (i), (j)(1)); *see also Judd v. Weinstein*, 967 F.3d 952, 956 (9th Cir. 2020) (noting that Cal. Civil Code § 51.9 "prohibits sexual harassment in 'a wide variety of business relationships'"); Cal. Gov't Code 12940(h) (restricting any "employer" from "discharg[ing], expel[ling], or otherwise discriminat[ing] against any person" for making certain reports); Cal. Gov't Code 12940(i) (forbidding "any person to aid, abet, incite, compel, or coerce the doing of the acts forbidden under" the Fair Employment and Housing Act); Cal. Gov't Code § 12940(j)(1)

(prohibiting "[h]arassment of an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract by an employee"); *Martin v. Board of Educ. of Berkeley Unified Sch. Dist.*, No. 20-cv-04389-EMC, 2023 WL 2716586, at *6 (N.D. Cal. Mar. 30, 2023) ("A hostile work environment cannot exist . . . after an employment relationship has been terminated.").

The new complaint makes only one harassment allegation occurring during Vashisht-Rota's identified employment period: "HMS harassed Plaintiff in March 2017." (ECF 70, at 20.) But this is of a piece with the "mere 'conclusions' or 'formulaic recitations' of elements" that this Court previously criticized and rejected. (*See* ECF 65, at 10 (quoting *Twombly*, 550 U.S. at 555 (cleaned up)).) As the Court said before: "That will not do." (*Id.*) Thus, counts 2 through 5 must be dismissed.

### 3. Unruh Civil Rights Act (Count 6)

In Count 6, Vashisht-Rota renews her allegations of violations of the Unruh Civil Rights Act. *See* Cal. Civil Code § 51. This law still "has no application to employment discrimination" or any other issue in this case. *See Brennon B. v. Superior Ct.*, 513 P.3d 971, 988 (Cal. 2022). This statute is exclusively concerned with non-discriminatory access to California businesses by that business's "clients, patrons or customers." *Alcorn v. Anbro Eng'g, Inc.*, 468 P.2d 216, 220 (Cal. 1970). It cannot serve as the basis for an employment-discrimination claim, as that "would create an end-run around the administrative procedures" of the Fair Employment and Housing Act. *Bass v. County of Butte*, 458 F.3d 978, 982 (9th Cir. 2006).

Vashisht-Rota's citation to a FEHA section which makes it "unlawful" to "deny or to aid, incite, or conspire in the denial of the rights created by [California Civil Code] Section 51" does not alter this result. *See* Cal. Gov't Code § 12948. A FEHA cause of action under the cited section—California Government Code section 12948—"cannot proceed to the extent that it is an employment-related discrimination claim premised on rights incorporated through the Unruh Act." *Allford v. Barton*, No. 1:14-CV-00024-AWI-JLT, 2015 WL 2455138, at *23 (E.D. Cal. May 22, 2015). And even if section 12948 did

apply to allegations of sexual harassment in employment, the claim would fail for the same reason as the other harassment claims previously discussed. Count 6 is dismissed.

### 4. *Business Discrimination (Count 7)*

In count 7, Vashisht-Rota alleges a violation of California Civil Code section 51.5 that again is missing any allegation regarding the essential element of "intentional discrimination." *See Long v. Playboy Enters. Int'l, Inc.*, 565 F. App'x 646, 647 (9th Cir. 2014). Section 51.5 requires, in pertinent part, that "no business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in this state on account of [gender]." Cal. Civ. Code § 51.5(a). When the Court last dismissed this claim, it noted: "Although Vashisht-Rota contends that Ottawa has a gender animus, her allegations are entirely conclusory." (ECF 65, at 12.) The new complaint adds little to its deficient predecessor. In this count, Vashisht-Rota now remarks: "Should Plaintiff finally get to compete, perhaps Dr. DeWald does not get paid from her male white friends." (ECF 70, at 27.) And she adds some conclusory statements, such as: "The differential treatment in the messages sent, responses between male and female founders is contrary to California's strong public policy that discrimination based on the basis of sex is substantial and fundamental." (*Id.*) Yet the same deficiencies remain. She has not alleged any plausible, non-conclusory facts to show that Ottawa is refusing to work with her on account of her sex. Count 7 must be dismissed.

### 5. *Unfair Competition (Count 8)*

Vashisht-Rota's Unfair Competition Law claim also falls, as it is derivative of other deficient claims. California prohibits unfair competition by means of "any *unlawful*, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200 (emphasis added). "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). Vashisht-Rota contends that she meets the "unlawful" prong with allegations of "retaliating," "aiding and abetting harassment," and "failing to prevent harassment." (ECF 70, at 28.) In other words, she predicates her proof of the "unlawful

prong" on her now-dismissed claims in counts 3 to 5. "If a plaintiff cannot state a claim under the predicate law, . . . the [Unfair Competition Law] claim also fails." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017).

### 6. *Sherman Act (Count 9)*

In her last cause of action—ostensibly a claim under the Sherman Act, 15 U.S.C. § 1 (*see* ECF 70, at 29–37)—Vashisht-Rota managed to violate not just one, but two court orders. First, because the Sherman Act claim did not appear in her prior complaint, she was not permitted to add it to this new complaint. Specifically, in its order dismissing the prior complaint, this Court provided an opportunity to amend, but with the important restriction that Vashisht-Rota "not add . . . new causes of action to any such amended complaint." (ECF 65, at 13.) The Court imposed this somewhat unusual constraint due to hard-won wisdom in dealing with Vashisht-Rota's prior abuses of court processes. (*See, e.g.*, ECF 78 (noting the Court received "over 40 emails from plaintiff" in one week, on topics ranging "from criticizing other judges, to legal arguments and theories, to damages calculations, to the British royals, and even to pop star Taylor Swift's age"); ECF 52 (347-page response to a motion to dismiss); ECF 62 & 63 (unauthorized "supplemental briefs")); *see also Vashisht-Rota v. Howell Management Servs.*, No. 3:20-cv-0321-AGS-KSC (S.D. Cal. Dec. 11, 2023), ECF 316 (striking over 700 pages of unauthorized filings despite "repeated warnings" to stop filing in that closed case).

In addition, the Court later issued a second order reiterating limits on the new complaint. Due to the existing restriction, Vashisht-Rota sought leave to add claims under the "Speak Out Act," 42 U.S.C. § 19401 *et seq*., and under provisions relating to "slavery, involuntary servitude, or forced labor." (ECF 66; ECF 68, at 1.) The Court denied these requests, given the lack of any coherent explanation for them. (*See* ECF 69.) In defiance of this explicit ruling, Vashisht-Rota smuggled both legal theories into the third amended complaint under the banner of the new Sherman Act claim. That is, within count 9 she specifically discusses the "Speak Out Act" and includes a lengthy subsection pertaining to "Involuntary Servitude/Slavery." (*See* ECF 70, at 29–36 (emphasis removed).)

A judge "may strike claims from any pleading for failure to comply with the court's orders." *Naranjo v. Bank of Am. Nat'l Ass'n*, No. 14-CV-02748-LHK, 2015 WL 4463851, at *13 (N.D. Cal. July 21, 2015). Based on the foregoing violations, this Court strikes from the third amended complaint any portions relating to the new legal theories concerning the Speak Out Act and slavery/involuntary servitude. Even if they weren't stricken, both these legal theories fail for insufficient allegations of conspiracy or vicarious liability. For instance, Vashisht-Rota alleges that Ottawa "knows or should have known that Plaintiff is being held as a slave without payment," but that doesn't suggest that Ottawa agreed to—or is responsible for—keeping her in "indentured servitude." (*See* ECF 70, at 30.) And the Speak Out Act allegations are even more tenuous. Vashisht-Rota believes that the settlement offer she rejected from HMS in a different case violates that Act, because it allegedly included a confidentiality clause "that Plaintiff stay silent about the harassment." (*Id.* at 35.) Ottawa appears to have nothing whatsoever to do with these allegations.

Although the rest of count 9—the Sherman Act claim—also violated the amendment restriction, this Court will nonetheless review what remains. After all, the prior complaint included a California Cartwright Act claim, and the "analysis of a claim under the Cartwright Act mirrors the analysis" under the federal Sherman Act. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666 n.8 (9th Cir. 2022).

In its last order, the Court dismissed Vashisht-Rota's Cartwright Act claim because she had "not detailed any conspiracy—or any agreement whatsoever—involving Ottawa." (ECF 65, at 11.) The same problem applies here. The "crucial question" in Sherman Act litigation "is whether the challenged anticompetitive conduct stems" "from an agreement, tacit or express." *Twombly*, 550 U.S. at 553 (cleaned up). Once again, the alleged facts don't plausibly point to any conspiracy. The allegation that comes closest to hitting the mark is Vashisht-Rota's claim that Ottawa and HMS "mimicked the same behavior," which "stemmed from a tacit agreement to not allow women or people of color in management." (ECF 70, at 31.) But a "statement of parallel conduct, even conduct consciously undertaken," is insufficient to plead a conspiracy in a Sherman Act claim. *Twombly*,

550 U.S. at 557. Aside from the fact that neither Ottawa nor HMS worked with Vashisht-Rota after 2017, there is simply nothing in the complaint to suggest they colluded to box her out of the industry. As before, the complaint "offers no details as to a specific time, place, or person involved in how Defendant allegedly 'agreed to boycott Plaintiff.' It therefore insufficiently shows the formation and operation of a conspiracy." (ECF 65, at 11 (cleaned up).) The Sherman Act claim is thus dismissed.

C.    **Leave to Amend**

Generally, courts should not dismiss complaints by unrepresented plaintiffs, like Vashisht-Rota, without offering them at least one "opportunity to amend." *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). But when plaintiffs have "previously been granted leave to amend" and then "failed to add the requisite particularity," the court's discretion to forbid further amendment is "particularly broad." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020). Vashisht-Rota was already given a second bite at the apple—and then a third. She was warned this was her "one last opportunity," yet she failed to remedy the identified defects. (*See* ECF 65, at 13.) It is now "absolutely clear that the deficiencies of the complaint [cannot] be cured by amendment." *See Akhtar*, 698 F.3d at 1212. Further leave to amend is denied.

## CONCLUSION

Defendants' motion to dismiss is **GRANTED**. The third amended complaint is dismissed with prejudice and without leave to amend. The Clerk will issue a judgment and close this case. Except for any notice of appeal, "[n]o further filings will be entertained in this closed [case]." *See Vashisht-Rota v. Howell Mgmt. Servs.*, No. 24-994, 2024 WL 2559491, at *1 (9th Cir. Apr. 23, 2024).

Dated:  September 30, 2024

Hon. Andrew G. Schopler
United States District Judge